1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MALLORY,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | No.  1:19-cv-01295-EPG<br><br><br>FINAL ORDER AND JUDGMENT REGARDING SOCIAL SECURITY COMPLAINT<br><br>(ECF No. 20) |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8, 23).

At a hearing on January 22, 2021, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

///

///

///

1

### A. Medical Testimony

Plaintiff claims that the ALJ made legal error by rejecting Dr. Zaw's opinion regarding Plaintiff's severe mental health impairments. The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Dr. Zaw's opinion is contradicted by Plaintiff's treating provider, LMFT Melissa Tihin. Thus, the Court weighs whether the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Zaw's opinions.

> The undersigned accords little weight to Dr. Zaw's opinion. Dr. Zaw practices internal medicine and there is no evidence he is qualified to offer a medical opinion on the claimant's mental functioning (Exhibit 13F/9). Moreover, his conclusions are at odds with Ms. Tihin's statement and the benign clinical findings at House Psychiatric Clinic.

(A.R. 23).

Plaintiff argues that the ALJ erroneously cherry-picked Tihin's findings to discount Dr. Zaw's opinion, that the ALJ improperly discounted Dr. Zaw on account of his being an internist,

1   and that Tihin stated she is not qualified to opine on work restrictions.

2          First, there are few records from Tihin. Plaintiff points to a letter from Tihin which states

3   that Plaintiff "met medical necessity for treatment" and was diagnosed with "Major Depressive

4   Disorder, Recurrent, Moderate, With Peripartum Onset" and "Generalized Anxiety Disorder[.]"

5   (A.R. 422; *see also* A.R. 743 (similar)). However, the same letter states that Plaintiff's

6   "understanding, memory, sustained concentration, persistent social interactions, and adaptation

7   appear to be functioning and intact at this time." (A.R. 422). Plaintiff does not point to other

8   records from Tihin. Thus, although Tihin supported a finding of depression and anxiety, Plaintiff

9   has not adequately shown that the ALJ cherry-picked Tihin's findings.

10          Second, Plaintiff is correct that the ALJ may not discount Dr. Zaw's opinion merely

11   because Dr. Zaw is an internist, not a specialist. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

12   1987) ("If the Magistrate's conclusion that there was no psychiatric evidence is based on an

13   assumption that such evidence must be offered by a Board-certified psychiatrist, it is clearly

14   erroneous. There is no such requirement in the regulations."). However, the ALJ also relied on

15   other reasons. Specifically, the ALJ pointed to Tihin's contrary findings and the House

16   Psychiatric Clinic's "benign clinical findings[.]"

17          At the hearing, Plaintiff argued that the House Psychiatric Clinic findings were not benign

18   and cited to A.R. 550 and 551. Those pages note that Plaintiff's "[m]ood and affect" were

19   "[c]ongruent" although "anxious" and "elevated," (A.R. 550), and that her "[a]nxiety and sleep

20   issues persist," (A.R. 551). These findings do not indicate that Plaintiff's impairments had more

21   than a minimal effect on her work. Thus, they do not contradict the ALJ's conclusion that the Dr.

22   Zaw's "conclusions are at odds with . . . the benign clinical findings at House Psychiatric Clinic,"

23   in the ALJ's evaluation at step 2 regarding severe impairments.  (A.R. 23). *See also Webb v.*

24   *Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) ("An impairment or combination of impairments

25   may be found not severe *only if* the evidence establishes a slight abnormality that has no more

26   than a minimal effect on an individual's ability to work." (emphasis in original)).

27          Third, even though Tihin stated she is not qualified to opine on work restrictions, (*see*

28   A.R. 743), the ALJ may still rely on her findings concerning Plaintiff's mental state. Thus, it was

1    not improper for the ALJ to rely on Tihin's letter noted above.

2          Therefore, the ALJ provided specific and legitimate reasons supported by substantial

3    evidence for giving little weight to Dr. Zaw's opinions.

4          **B.      Step Three Finding**

5          Next, Plaintiff contends the ALJ erred at step three by failing to assess whether Plaintiff

6    meets listing 1.04A.

7          "At step three, the medical evidence of the claimant's impairment is compared to a list of

8    impairments presumed severe enough to preclude gainful work. If the claimant meets or equals

9    one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*,

10   900 F.2d 172, 174 (9th Cir. 1990) (citations omitted).

11         A claimant meets a listing if he or she meets all the criteria and equals a listing if he or she

12   has medical findings equal in severity to a listing:

> At step three, the ALJ evaluates whether the claimant has an impairment, or
> combination of impairments, that meets or equals the criteria of any of the
> impairments listed in the "Listing of Impairments" (referred to as the
> "listings"). *See* § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A).
> The listings describe impairments that are considered "to be severe enough to
> prevent an individual from doing any gainful activity." § 404.1525(a). Each
> impairment is described in terms of "the objective medical and other findings
> needed to satisfy the criteria of that listing." § 404.1525(c)(3). "For a claimant to
> show that his impairment matches a listing, it must meet *all* of the specified
> medical criteria. An impairment that manifests only some of those criteria, no
> matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110
> S.Ct. 885, 107 L.Ed.2d 967 (1990) (footnote omitted). If an impairment does not
> meet a listing, it may nevertheless be "medically equivalent to a listed
> impairment" if the claimant's "symptoms, signs, and laboratory findings are at
> least equal in severity to" those of a listed impairment. § 404.1529(d)(3). But a
> claimant cannot base a claim of equivalence on symptoms alone. Even if the
> claimant alleges pain or other symptoms that makes the impairment more severe,
> the claimant's impairment does not medically equal a listed impairment unless the
> claimant has signs and laboratory findings that are equal in severity to those set
> forth in a listing. § 404.1529(d)(3). If a claimant's impairments meet or equal the
> criteria of a listing, the claimant is considered disabled. § 404.1520(d).

26   *Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020) (footnote omitted, emphasis in original).

27         The Ninth Circuit has stated the following concerning an ALJ's obligation to review

28   potential listings:

In the context of determining whether a combination of impairments establishes equivalence, other circuits have found that the ALJ must make sufficient findings. *See Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir.1989) (remanding to the Secretary because "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments"); *Jamison v. Bowen,* 814 F.2d 585, 589 (11th Cir.1987) ("in order to make our review meaningful, we must be able to determine what statutory and regulatory requirements the ALJ did in fact apply—where we cannot do that we must vacate and require a remand to the Secretary for clarification").

We hold that, in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments. Applying this standard to the findings in this case, we find that the statement that Marcia did not equal the listing was insufficient.

*Marcia*, 900 F.2d at 176.

The Ninth Circuit has limited *Marcia*'s holding, as discussed in *Burch v. Barnhart*:

An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir.2001) (in distinguishing *Marcia v. Sullivan,* 900 F.2d 172 (9th Cir.1990), this Court determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment).

400 F.3d 676, 683 (9th Cir. 2005).

Turning to Plaintiff's case, the ALJ made the following findings at step three:

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The medical evidence fails to support a finding that the claimant's medically determined impairments are attended by clinical findings that meet or equal the criteria of any listed impairment.

(A.R. 24).

Plaintiff argues that the ALJ should have considered the listing 1.04A, which states as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral

fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (paragraph break omitted).

In Plaintiff's opening brief, she argues that "[t]he ALJ erred in finding that Plaintiff did not meet listing 1.04A." (ECF No. 20 at 11). In its opposition, the Commissioner contends that Plaintiff does not meet 1.04A because she has a negative sitting straight-leg raising test. (ECF No. 21). The Commissioner cites A.R. 487 ("Sitting straight leg raising: Left: negative, Right: negative"), 493 (same), and 501 (same).

In her reply brief and during argument, Plaintiff appears to concede that, based on these findings, Plaintiff does not meet the listing. However, Plaintiff argues that the ALJ must also consider whether Plaintiff's impairments *equal* the listing.

In *Ford*, the Ninth Circuit held that the claimant's argument that her impairments equaled a listing's criteria was insufficient because she did not point to record evidence:

> Finally, Ford argues that the ALJ erred by failing to consider whether a combination of her impairments medically equaled the criteria of Listings 1.02 or 1.03. This argument also fails, because "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see also Lewis*, 236 F.3d at 514. While Ford's attorney made passing reference to a "combination of impairments" at the administrative hearing before the ALJ, he did not argue or explain how such a combination was medically equal to a gross anatomical deformity under Listing 1.02 or a reconstructive surgery of a major weight-bearing joint under Listing 1.03. Because the ALJ did not have an obligation to discuss medical equivalency sua sponte, the ALJ did not err in failing to do so. *See Burch*, 400 F.3d at 683.

950 F.3d at 1157.

Likewise, here, Plaintiff asserts she equals the listing's criteria. However, Plaintiff does not provide any citations to the record to establish equivalence. Plaintiff merely relies on her earlier citations and evidence that Plaintiff meets the listing. Thus, as in *Ford*, "[b]ecause the ALJ did not have an obligation to discuss medical equivalency sua sponte, the ALJ did not err in

1   failing to do so." *Id.*

2   　　　The Court also notes that two State agency non-examining physicians considered listing

3   1.04. Dr. S.A. Brodsky found that "no sublistings [of 1.04 were] met/equaled." (A.R. 90). Dr. R.

4   Paxton reviewed listing 1.04, (A.R. 92), and concluded Plaintiff's "allegations not functionally

5   limiting by substantiated evidence[.]" (A.R. 93) (capitalization changed). Moreover, the ALJ

6   noted that Plaintiff "reported improvement of back pain and that she was exercising more than

7   three times per week," indicating that her back pain is not as severe as claimed. (A.R. 27).

8   　　　For these reasons, the Court declines to remand based on the failure to assess whether

9   Plaintiff meets listing 1.04A.

10   **C.　　Substantial Gainful Activity**

11   　　　Finally, Plaintiff argues that the ALJ erred by finding her work as an order clerk was past

12   relevant work at step four because her work was not a substantial gainful activity.

13   　　　The Ninth Circuit has held the following concerning step four:

14
15   　　At step four, the claimant bears the burden of showing that he or she does not
      have the residual functional capacity to engage in "past relevant work." 20 C.F.R.
16   　　§§ 404.1520(e) & 416.920(e); *Tackett*, 180 F.3d at 1098. A job qualifies as past
      relevant work only if it involved substantial gainful activity. *See* 20 C.F.R. §§
17   　　404.1560, 404.1565, 416.960 & 416.965. If a claimant can perform his or her past
      relevant work, then he or she is not disabled. If not, or if he or she did not do past
18   　　relevant work, then the ALJ moves to step five, in which he or she determines if
      the claimant has the residual functional capacity to do other substantial gainful
19   　　work.

20   　　Substantial gainful activity is work done for pay or profit that involves significant
      mental or physical activities. 20 C.F.R. §§ 404.1571–404.1572 & 416.971–
21   　　416.975. Earnings can be a presumptive, but not conclusive, sign of whether a job
      is substantial gainful activity. Monthly earnings averaging less than $300
22   　　generally show that a claimant has not engaged in substantial gainful activity. 20
      C.F.R. §§ 404.1574(b)(3) & 416.974(b)(3). At the other end of the spectrum,
23   　　monthly earnings averaging more than $500 generally show that a
      claimant *has* engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(2)
24   　　& 416.974(b)(2).

25   *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). The earnings requirements have since changed.

26   "The monthly amount to show substantial gainful activity for a non-blind claimant [wa]s . . . $900

27   in 2007," *Bryant v. Comm'r of Soc. Sec.*, 2019 WL 4744942, at *2 (M.D. Fla. Sept. 30, 2019)

28

(citing 20 C.F.R. § 416.974(b)(2)(ii) and Social Security Administration, *Substantial Gainful Activity*, https://www.ssa.gov/oact/cola/sga.html), which is the year that Plaintiff states—and the Commissioner does not contest—is relevant to this case.

To determine monthly earnings, the Commissioner typically, but not always, averages earnings:

> (a) If your work as an employee or as a self-employed person was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels, we will average your earnings over the entire period of work requiring evaluation to determine if you have done substantial gainful activity. . . .
>
> (c) If there is a significant change in your work pattern or earnings during the period of work requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity.

20 C.F.R. § 404.1574a. *See also* 20 C.F.R. § 416.974a (identical with respect to subsection (c)).

A promotion can constitute "a significant change in your . . . earnings," 20 C.F.R. § 404.1574a(c), requiring averaging over each period of work. *Martinez v. Colvin*, 2014 WL 1663359, at *6 n.2 ("The second example following 20 C.F.R. § 404.1574a . . . describes a hypothetical claimant who 'had increased her secretarial skills to journeyman level' and was promoted as a result, permanently increasing her earnings effective in a given month. The Commissioner explains that her earnings are averaged for the period prior to her promotion separately from the period following her promotion 'because there was a significant change in work activity and earnings' beginning in the month of her promotion, resulting in a finding that she performed SGA after that date." (emphasis in original)).

Here, the ALJ determined that Plaintiff was able to perform past relevant work as an order clerk: "Based on the level of earnings, length of employment, and recency of the position, the undersigned finds that the Order Clerk position qualifies as past relevant work (Exhibit 14D; claimant testimony)." (A.R. 28).

Plaintiff worked at California Pizza Kitchen in 2006, 2007 and 2008. (A.R. 259-60). She earned $1,979.22, $15,627.18, and $4,376.33 there in those three years, respectively. (*Id.*). At the administrative hearing, Plaintiff testified that she was an order clerk "for probably five or six

months" before being promoted to supervisor and then general manager:

> Q Okay. So after your accident you were doing phone orders. Were you sitting at a desk all day or standing up?
> A I was sitting in a chair by the phone lines.
> Q Okay. And how long did you do that?
> A For a few months. Well, for several -- I'm sorry, for probably five to six months.
> Q Okay. And then you got promoted to general manager?
> A To a supervisor first --
> Q Right.
> A -- Your Honor.
> Q Okay. How long were you supervisor?
> A For about a year.

(A.R. 45).

Plaintiff argues that her earnings as a supervisor "undoubtedly were higher" than her earnings as an order clerk (ECF No. 20 at 14), so the ALJ erred by averaging her 2007 earnings, which included both positions. However, Plaintiff has presented no evidence that her earnings changed.  Although Plaintiff had counsel at the hearing, (*see* A.R. 37), she points to nothing in the record showing her actual earnings in her various positions at California Pizza Kitchen, or that they changed by position.

The Northern District of Ohio faced a similar issue in *Wade v. Astrue*, 2012 WL 1004728 (N.D. Ohio 2012). There, the claimant held multiple jobs in 1999, and the ALJ determined one was past relevant work. However, the record did not establish which months plaintiff held which job. *Id.* at *2. Although the ALJ erred in averaging the claimant's annual earnings and dividing her annual earnings by 12, the error did not require remand because the claimant failed to carry her burden: "Plaintiff failed to provide any evidence regarding what that denominator should be. Plaintiff, who has the burden of proof at step four of the sequential analysis, has thus failed to establish that, based on her earnings alone, the ALJ erred in finding that her job as a bench assembler was substantial gainful activity and past relevant work." *Id.* at *3.

Likewise, here, the record does not establish that averaging was improper in this circumstance. Thus, as in *Wade*, Plaintiff has not carried her burden of proof at step four. *See also Amos v. Astrue*, 2014 WL 1324389, at *5 (S.D. Miss. Mar. 31, 2014) (ALJ did not err in

9

averaging annual earnings instead of monthly earnings for certain jobs because "Plaintiff, who bears the burden of proof through step four of the process, failed to produce evidence of the number of months she worked at each job or was unemployed. By her own admission on appeal, her monthly earnings records for BC Rogers Poultry, Inc., were not in evidence at the time of the administrative hearing, and significantly, none were included in the new evidence submitted for the Appeals Council's consideration" (citations omitted)).

Moreover, the ALJ also relied on the "length of employment" (five or six months) and the "recency of the position" (somewhere between 2006 and 2008). This was permissible under 20 C.F.R. §§ 404.1574(b)(3)(ii)(A) & 416.974(b)(3)(ii)(A). *See Le v. Astrue*, 540 F. Supp. 2d 1144, 1149 (C.D. Cal. 2008) (noting that earnings "are not dispositive" and quoting the aforementioned regulations).

For these reasons, the Court finds that the ALJ's finding at Step Four was supported by substantial evidence.

**D.     Conclusion and Order**

Thus, the decision of the Commissioner of Social Security is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **February 12, 2021**          /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE